FILED

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

2016 APR -4  A 11: 13

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| DOUGLAS DREIST,<br>6518 Hitt Avenue<br>McLean, Virginia 22101,<br><br>    *Plaintiff*,<br><br>    v.<br><br>WASHINGTON GAS LIGHT CO.,<br>6801 Industrial Road<br>Springfield, Virginia 22151<br><br>    and<br><br>WGL Holdings, Inc.<br>101 Constitution Avenue, N.W.<br>Washington, D.C.<br><br>Registered Agent:<br>Corporation Service Company<br>1111 E. Main Street, 16th Floor<br>Richmond, Virginia 23219<br><br>    *Defendants*. | Civil Action No. 1:16-CV-368<br>( LO/TCB ) |

## COMPLAINT

### NATURE OF CLAIM

1. Plaintiff, Douglas Dreist, former employee of Washington Gas Light Co., and WGL Holdings, Inc., (a joint and single employer hereinafter collectively referred to as "Washington Gas"), moves for judgment against Washington Gas to recover declaratory and injunctive relief and monetary damages to redress the deprivation of rights secured to plaintiff by Section 1981 of the Civil Rights Act of 1866 ("Section 1981") and Title VII of the Civil Rights Act of 1964, as amended in 1972, 42 U.S.C. §§ 2000e *et seq.* ("Title VII").

### PARTIES

2. Douglas Dreist is a United States citizen who is a resident of McLean, Virginia. Mr. Dreist began working for Washington Gas on November 26, 1979. For 35 years, he was an employee of Washington Gas.

1

3. From the time of his promotion to management in 2003 until his discharge in 2015, Mr. Dreist consistently met or exceeded all of the requirements of his position, as documented by his mid-year and annual performance appraisals.

4. Washington Gas Light Co., and WGL Holdings, Inc., are related corporations which, at all times relevant to this complaint, operated a place of business at 6801 Industrial Road, Springfield, Virginia 22151. Their headquarters is located at 101 Constitution Avenue, N.W., Washington, D.C.

5. At all times relevant to this complaint, Washington Gas had at least 15 employees and was subject to the provisions of Title VII.

## *CONDITIONS PRECEDENT*

6. Douglas Dreist has fulfilled all conditions precedent to the institution of this action under 42 U.S.C. § 2000(e). He filed a timely charge with the Equal Employment Opportunity Commission and the Virginia Human Rights Commission and has received a Notice of Right to Sue (attached hereto as Exhibit A).

## *SUMMARY OF FACTS*

7. During Mr. Dreist's employ with Washington Gas, the company had a pattern or practice of discriminating against employees on the basis of race. Washington Gas discriminated against Mr. Dreist on the basis of race, and Washington Gas retaliated against Mr. Dreist for opposing race discrimination by suspending and then terminating Mr. Dreist's employment.

## *FACTS*

8. Beginning in approximately December 2013, Douglas Dreist perceived that Washington Gas was rejecting him for promotion in favor of African-American employees based, not on applicants' relative qualifications for the various positions, but based primarily on race.

9. In approximately December 2014, Washington Gas passed over Mr. Dreist for two different positions that he had applied for: (1) Manager of Customer Care and (2) Manager of Customer Experience.

10. The persons put into the two positions referred to in the preceding paragraph were both African-American.

11. The woman promoted into the Manager of Customer Care position was less qualified for the position as it was originally written, than was Mr. Dreist.

12. The man promoted into the Manager of Customer Experience position was less qualified for the position, than was Mr. Dreist.

13. On at least three occasions from December 2013 to the end of his employment in March 2015, Mr. Dreist complained about the discrimination to managers and human resources personnel at Washington Gas.

14. In complaining that Washington Gas was promoting employees on the basis of unlawful considerations rather than on the basis of merit, Mr. Dreist was exercising his statutory right to oppose discrimination on account of race, without fear of retaliation.

15. Washington Gas failed to conduct an investigation or take any remedial action in response to Mr. Dreist's complaints of discrimination.

16. If Washington Gas had conducted a good faith investigation into the matter, it would have learned that Douglas Dreist had been passed over for promotion in favor of less qualified applicants.

17. Because Mr. Dreist complained about illegal discrimination, Washington Gas began looking for an excuse to fire him, and Washington Gas did eventually fire him.

18. Washington Gas made up a pretextual reason to terminate Douglas Dreist, claiming that he was fired for sending (on January 14, 2015) a racially derogatory video to a few other Washington Gas employees. This allegation was pretext for discrimination and retaliation.

19. The video that Mr. Dreist sent a link to was not racially derogatory. He sent the video link to four people (one supervisor, one peer, and two direct reports) for good-natured and even friendly reasons.

20. The only response Doug Dreist received to the video at the time he sent it was a comment about it being funny or someone chuckling about it. No one made a negative comment about the video to Mr. Dreist.

21. In his thirty-five years of employment with Washington Gas, no one at Washington Gas ever alleged that Mr. Dreist had said or done anything that was racist or sexist until Mr. Dreist complained that Washington Gas was promoting people on the basis of race (or sex) rather than on the basis of merit.

22. On March 11, 2015, Washington Gas called Mr. Dreist into a meeting in a conference room with five other Washington Gas employees, including the company's general counsel for labor and employment, the manager of labor relations, the ombudsman, and two human resources employees.

23. Washington Gas told Mr. Dreist that an unnamed employee first complained about the video seven weeks after Mr. Dreist had sent the link to the video.

24. During the March 11, 2015, meeting referred to in the preceding paragraph, Washington Gas questioned Mr. Dreist for over an hour. They repeatedly asked him the same questions.

25. Mr. Dreist perceived that Washington Gas was trying to get him to give some other excuse to terminate him.

26. Washington Gas told Mr. Dreist that the video contained the "n" word, and that the comments attached to the video also contained that word.

3

27. Mr. Dreist said that he was quite certain that the video did not contain the "n" word, and that he was not aware that there were any comments attached to the video. He explained that he had sent the video to lighten the mood and cheer people up and that he did not see the video as derogatory or racist.

28. Mr. Dreist further explained that he would have never sent the video to anyone (including his supervisor) if he had seen anything offensive or derogatory in it; that he did not mean to offend anyone; and that he was sorry if he had offended anyone.

29. Mr. Dreist further explained that, at the time he sent a link to the video, people he had sent it to responded as if they had found the video humorous. Nobody had mentioned to him that there were any comments attached to the video.

30. Mr. Dreist asked the Washington Gas attorney who was questioning him whether she perceived the video as racist. She said, "No. I see it as sexist."

31. Mr. Dreist explained that, not only had he not intended to do anything that would be racially offensive, but that he believed he was the one who had been subject to a racially discriminatory work environment.

32. Mr. Dreist repeated his complaint that he had not been selected for two management positions he had applied for even though he had significantly more experience than those selected. He also explained other things that he believed tended to show that his supervisor was treating him in a racially discriminatory manner.

33. Washington Gas put Mr. Dreist on administrative leave that day, March 11, 2015, and told Mr. Dreist that it would investigate his claims of race discrimination.

34. Although Mr. Dreist had been employed at Washington Gas for 35 years, Washington Gas would not permit him to return to his desk to collect his personal belongings before going home from work for the last time.

35. Washington Gas discriminatorily suspended Mr. Dreist and did so in retaliation for his exercise of his statutory right to oppose discrimination.

36. When he was put on administrative leave, Mr. Dreist had understood and expected that he would be interviewed by a Washington Gas investigator regarding his claims of race discrimination. However, no one from Washington Gas ever spoke to him again to ask him any questions outside of the abrupt interrogation in front of a panel of many witnesses for which he had had no warning and no opportunity to prepare.

37. On April 10, 2015, Washington Gas sent Mr. Dreist a letter stating that it had investigated his claim of discrimination and that "no actions were found to have been taken against you for any non-legitimate business purpose."

38. Washington Gas again failed to conduct a good faith investigation or take any remedial action in response to Mr. Dreist's complaints of discrimination and/or retaliation.

39. On April 14, 2015, Washington Gas terminated Mr. Dreist's employment, allegedly because, on January 15, 2015, he had sent a video "which was perceived as 'derogatory and racist.'"

40. Washington Gas terminated Mr. Dreist allegedly but pretextually "for cause," thereby depriving Mr. Dreist of approximately $16,000 of accrued but unused paid time off (PTO) that he would have been paid had he not been terminated for cause.

41. Although Mr. Dreist repeatedly requested that Washington Gas return to him documentation and a LEED training certification that would have helped him with regard to his eligibility for new employment, Washington Gas refused to ever send him the requested documentation.

42. Washington Gas has forbidden Mr. Dreist from stepping onto Washington Gas property, thereby effectively forbidding Mr. Dreist from attending Washington Gas's annual shareholder meetings, even though he is a shareholder; visiting the credit union, of which he is a member; or attending the annual meetings of the Quarter Century Club, of which is also a member.

43. Washington Gas maliciously, vindictively, and abruptly suspended and then terminated Mr. Dreist's employment without reasonable notice and in retaliation for his complaints of race discrimination.

44. Washington Gas further deprived Mr. Dreist of his accrued paid time off, refused to return to him training documentation and an LEED certification, prevented him from attending shareholders meetings, visiting the credit union, or attending the Quarter Century Club meetings, all in retaliation for his exercising his right to oppose discrimination in violation of Section 1981 and Title VII.

45. Washington Gas told the hearing examiner at the Virginia Unemployment Compensation Commission that Washington Gas fired Douglas Dreist because he had sent a racially derogatory video.

46. The Virginia Unemployment Compensation Commission hearing examiner provided a fax number so that Washington Gas could send her a link to the video. The hearing examiner thereafter held that "such action cannot, in the opinion of the deputy, be deemed misconduct...."

47. Washington Gas discriminated against Douglas Dreist on the basis of race and retaliated against him for his complaints of discrimination in violation of Section 1981 and Title VII.

48. Washington Gas's unlawful treatment of Douglas Dreist caused him to lose income and benefits and to suffer great distress.

49. Washington Gas is responsible for the acts of all of its supervisors, managers, and agents, through the doctrine of respondeat superior.

50. Washington Gas's conduct was willful, wanton, and vindictive.

51. Washington Gas knew or should have known that its intended conduct would have resulted in Mr. Dreist's financial harm and emotional distress.

52. As a direct and proximate result of said acts, Mr. Dreist has suffered adverse effects including loss of employment, loss of income, loss of other employment benefits, emotional distress, including, but not limited to, severe humiliation and embarrassment, and great expense.

## CAUSES OF ACTION

53. Plaintiff realleges each allegation above as though set forth in full herein.

54. The above acts and pattern and practice by defendant, its agents and employees violated Section 1981 of the Civil Rights Act of 1866 and Title VII of the 1964 Civil Rights Act.

WHEREFORE, Plaintiff prays that this court:

- Assume jurisdiction of this case;

- Enter a declaratory judgment that the acts and practices of defendant complained of herein are in violation of the laws of the United States;

- Award plaintiff the value of lost wages and fringe benefits, which resulted from defendant's illegal actions;

- Award plaintiff compensatory and punitive damages related to the emotional distress and other harms that Plaintiff suffered as a result of Defendant's illegally suspending and terminating his employment;

- Award plaintiff the costs of this action, together with reasonable attorney's fees;

- Award, in favor of Plaintiff and against the Defendant, pre-judgment and post-judgment interest on all amounts awarded pursuant to Plaintiff's claims;

- Award such other and further relief as the Court deems just.

*JURY TRIAL DEMAND*

Plaintiff demands a trial by jury.

Respectfully submitted,

April __4__, 2016

/S/ *[signature]*
Sharon Fast Gustafson
Attorney at Law, PLC
Counsel for Plaintiff
VSB No. 32800
4041 N. 21st Street
Arlington, Virginia  22207-3040
703-527-0147
sharon.fast.gustafson@gmail.com