# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| DOUGLAS DREIST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 1:16-cv-368 (LO/TCB) |
| | ) |
| WASHINGTON GAS LIGHT CO., | ) |
| | ) |
| And | ) |
| | ) |
| WGL HOLDINGS, INC., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS WASHINGTON GAS LIGHT COMPANY
AND WGL HOLDINGS, INC.'S
BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES ............................................................................. iii

INTRODUCTION .............................................................................................. 1

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE ................................ 2

    A.   Washington Gas Background and Policies. ......................................... 2

    B.   Dreist's Employment at Washington Gas. ............................................ 4

    C.   Hiring for the Manager, Customer Care and Manager, Customer Experience Positions. .......................................................................... 4

    D.   Dreist Sends the Kool Aid Rap Song Video. ...................................... 7

    E.   Dreist is Placed on Administrative Leave and Terminated from Employment ......................................................................................... 8

STANDARD OF REVIEW ............................................................................... 10

ARGUMENT .................................................................................................... 10

I.    Dreist was Terminated for Sending an Inappropriate Video to His Supervisor and Employees, Not Due to Any Retaliatory Animus ............. 10

    A.   Dreist's Prima Facie Case Fails Because He Cannot Allege Protected Activity or a Causal Connection Between any Alleged Protected Activity and His Termination .......................................................... 12

    B.   WGL Had a Legitimate, Non-Discriminatory Reason for Dreist's Termination ........................................................................................ 16

    C.   Dreist Cannot Show Washington Gas's Legitimate, Non-Discriminatory Reason was Pretextual ............................................. 17

II.   Dreist's Cause of Action for Race Discrimination Similarly Fails. ........... 20

    A.   Dreist Cannot Allege a Prima Facie Claim for Race Discrimination For the Manager, Customer Care Position Where He Withdrew His Application From Consideration. ....................... 21

i

B.  Washington Gas had a Legitimate, Non-Discriminatory Reason for Dreist's Non-Promotion. ................................................................22

1.  The Manager, Customer Care Position ........................................22

2.  The Manager, Customer Experience Position ............................24

C.  Dreist Fails to Show Pretext for His Non-Selection ........................25

CONCLUSION ..................................................................................................28

TABLE OF AUTHORITIES

**CASES**

*Amirmokri v. Baltimore Gas & Elec. Co.*,
  60 F.3d 1126, 1130 (4th Cir. 1995) ...................................................27

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)....................10

*Anderson v. Westinghouse Savannah River Co.*,
  406 F.3d 248, 272 (4th Cir. 2005) ...............................................26, 27

*Ayissi-Etoh v. Fannie Mae*,
  712 F.3d 572, 577 (D.C. Cir. 2013) ...................................................18

*Balas v. Huntington Ingalls Indus.*,
  711 F.3d 401, 410-411 (4th Cir. 2013) ............................................15

*Baqir v. Principi*,
  434 F.3d 733, 748 (4th Cir. 2006) ...................................................14

*Barker v. Computer Sci. Corp.*,
  2015 U.S. Dist. LEXIS 39994, *18 (E.D. Va. Mar. 27, 2015) ............11, 14, 19

*Beale v. Hardy*,
  769 F.2d 213, 214 (4th Cir. 1985) ...................................................25

*Bostic v. Rainey*,
  970 F. Supp. 2d 456, 465 (E.D. Va. 2014) .......................................10

*Buchhagen v. ICF Int'l, Inc.*,
  2016 U.S. App. LEXIS 9806, *13-14 (4th Cir. May 31, 2016).................13, 14

*DeJarnette v. Corning, Inc.*,
  133 F.3d 293, 299 (4th Cir. 1998) .......................................17, 23, 25

*Devonish v. Napolitano*,
  2014 U.S. Dist. LEXIS 15100, *25-30, 2014 WL 465707 (D. Md. Feb. 4,
  2014) ..................................................................................28

*Dowe v. Total Action Against Poverty in Roanoke Valley*,
  145 F.3d 653, 657 (4th Cir. 1998) ...................................................13

*EEOC v. Xerxes Corp.*,
  639 F.3d 658, 669 (4th Cir. 2011) ...................................................19

*Evans v. Techs. Applications & Serv. Co.*,
    80 F.3d 954, 959, 960 (4th Cir. 1996) ............................................................25

*Fair v. Basic Metals, Inc.*,
    2007 U.S. Dist. LEXIS 46745, *21, 2007 WL 1847282 (E.D. Wis. June 26,
    2007) ................................................................................................................18

*Faragher v. City of Boca Raton*,
    524 U.S. 775, 807, 118 S. Ct. 2275, 2293, 141 L. Ed. 2d 662, 689 (1998)......19

*Fletcher v. Philip Morris USA Inc.*,
    2009 U.S. Dist. LEXIS 63094, *30, 2009 WL 2067807 (E.D. Va. July 13,
    2009) ................................................................................................................13

*Filipovic v. K&R Express Sys. Inc.*,
    176 F.3d 390, 398-99 (7th Cir. 1999) ............................................................14

*Foster v. Univ. of Maryland-Eastern Shore*,
    787 F.3d 243, 250 (4th Cir. 2015) ..................................................................11

*Gairola v. Virginia Dep't of General Services*,
    753 F.2d 1281, 1285 (4th Cir.1985) ................................................................10

*Glynn v. Impact Sci. & Tech., Inc.*,
    807 F. Supp. 2d 391, 418-419 (D. Md. 2011)..................................................20

*Hamilton v. Geithner*,
    2009 U.S. Dist. LEXIS 49987, *35-36, 2009 WL 1683298 (E.D. Va. June 15,
    2009) ..........................................................................................................21, 25

*Harik v. NASA*,
    2006 U.S. Dist. LEXIS 60959, *41, 2006 WL 2381964 (E.D. Va. Aug. 16,
    2006) ..........................................................................................................13, 17

*Harris v. Rumsfeld*,
    428 F. Supp. 2d 460, 469 (E.D. Va. 2006) .....................................................27

*Heiko v. Colombo Sav. Bank*,
    434 F.3d 249, 259 (4th Cir. 2006) ..................................................................21

*Hill v. Lockheed Martin Logistics Mgmt., Inc.*,
    354 F.3d 277, 285 (4th Cir. 2004) .........................................................11, 17, 21

*Holland v. Wash. Homes, Inc.*,
    487 F.3d 208, 214 (4th Cir. 2007) ..................................................................21

*Hughes v. Navy Fed. Credit Union,*
    2012 U.S. Dist. LEXIS 1302, *37, 2012 WL 32404 (E.D. Va. Jan. 4,
    2012) ......................................................................................................11, 20

*Hux v. City of Newport News,*
    451 F.3d 311, 319 (4th Cir. 2006) ...................................................26

*Hysten v. Burlington N. & Santa Fe Ry. Co.,*
    296 F.3d 1177, 1184 (10th Cir. 2002) ..............................................14

*Ibrahim v. Old Dominion University,*
    1989 U.S. Dist. LEXIS 18059, *65-66 (E.D. Va. July 6, 1989).......................20

*Jiminez v. Mary Washington Coll.,*
    57 F.3d 369, 378 (4th Cir. 1995) .............................................11, 18

*Johnson v. Portfolio Recovery Assocs., LLC,*
    682 F. Supp. 2d 560, 578 (E.D. Va. 2009) ........................................12

*Justus v. Junction Ctr. for Indep. Living,*
    2012 U.S. Dist. LEXIS 32553, *11, 2012 WL 844340 (W.D. Va. Mar. 12,
    2012) ......................................................................................................22

*Khan v. FedEx Corp.,*
    2015 U.S. Dist. LEXIS 69912, *25-26 (E.D. Va. May 28, 2015 ...................25

*King v. Rumsfeld,*
    328 F.3d 145, 149 (4th Cir. 2003) ...................................................25

*Kipp v. Missouri Highway & Trans. Comm'n,*
    280 F.3d 893, 897 (8th Cir. 2002) ...................................................14

*Lounds v. Lincare, Inc.,*
    812 F.3d 1208, 1230 (10th Cir. 2015) ..............................................18

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).......................10, 20, 21

*McIntyre v. City of Chesapeake,*
    2015 U.S. Dist. LEXIS 56966, *21 (E.D. Va. Apr. 30, 2015)...................24, 27

*Mackey v. Shalala,*
    360 F.3d 463, 468 (4th Cir. 2004) ...................................................21

*Martin Marietta Corp. v. Maryland Comm'n Human Relations,*
    38 F.3d 1392 (4th Cir. 1994) ............................................................11

*Merritt v. Old Dominion Freight Line, Inc.,*
    601 F.3d 289, 294 (4th Cir. 2010) ....................................................17

*Miles v. Dell Inc.,*
    429 F.3d 480, 492 (4th Cir. 2005) ....................................................12

*Murchison v. Astrue,*
    466 Fed. Appx. 225, 230-231 (4th Cir. 2012) ...................................28

*Nasis-Parsons v. Wynne,*
    2006 U.S. Dist. LEXIS 35325, *10-11, 2006 WL 1555913 (E.D. Va. June 1,
    2006) ...............................................................................................14

*Perini Corp. v. Perini Constr., Inc.,*
    915 F.2d 121, 123-24 (4th Cir. 1990) ...............................................10

*Phillips v. City of Concord,*
    2013 U.S. Dist. LEXIS 66027, *28, 2013 WL 1934869 (M.D.N.C. May 9,
    2013) ...............................................................................................13

*Price v. Thompson,*
    380 F.3d 209, 214 n. 1 (4th Cir. 2004) .............................................23

*Reeves v. Sanderson Plumbing Prods.,*
    530 U.S. 133, 148, 120 S. Ct. 2097, 2109, 147 L. Ed. 2d 105, 120 (2000)......23

*Ross v. Communications Satellite Corp.,*
    759 F.2d 355, 365 (4th Cir. 1985) ....................................................11

*St. Mary's Honor Ctr. v. Hicks,*
    509 U.S. 502, 515, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).................11, 21

*Spriggs v. Diamond Auto Glass,*
    242 F.3d 179, 185 (4th Cir. 2001) ....................................................18

*Strag v. Bd. of Trs., Craven Cmty. Coll.,*
    55 F.3d 943, 953 (4th Cir. 1995) ......................................................28

*Tex. Dep't of Cmty. Affairs v. Burdine,*
    450 U.S. 248, 256, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)...................17, 26

*Thompson v. Kelso,*
    1997 U.S. App. LEXIS 24937, *3 (4th Cir. Va. Sept. 16, 1997)......................23

*Tyndall v. Dynaric, Inc.*,
    997 F. Supp. 721, 727-728 (E.D. Va. 1998) .....................................................22

*U.S. Postal Serv. Bd. of Governors v. Aikens*,
    460 U.S. 711, 714, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983)..........................17

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
    133 S. Ct. 2517, 2528, 186 L. Ed. 2d 503 (2013).............................................11

*Warch v. Ohio Cas. Ins. Co.*,
    435 F.3d 510, 518 (4th Cir. 2006) ...................................................................25

*Williams v. Cerberonics, Inc.*,
    871 F.2d 452, 456 (4th Cir. 1989) ...................................................................19

*Williams v. Giant Food, Inc.*,
    370 F.3d 423, 430 (4th Cir. 2004) ...................................................................22

*Williams v. Philadelphia Housing Auth. Police Dept.*,
    380 F.3d 751 (3d Cir. 2004)..............................................................................14

## RULES

Fed R. Civil Proc. 12(b)(6) ......................................................................................1
Fed R. Civil Proc. 12(d)..........................................................................................10
Fed R. Civ. Proc 56...............................................................................................1, 10
Fed R. Civ. Proc 56(c) ...........................................................................................10

Civil Rights Act of 1866, Section 1981 .............................................................10, 20
Civil Rights Act of 1964, Title VII......................................................................10, 20

Defendants Washington Gas Light Co. and WGL Holdings, Inc. (herein jointly "Washington Gas") by counsel, submit this brief in support of their Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. Proc. 12(b)(6), or in the alternative, for summary judgment pursuant to Fed. R. Civ. Proc. 56.

## INTRODUCTION

This case is ripe for summary judgment because the material facts are not in dispute. Douglas Dreist ("Driest") was terminated from his position as a Supervisor at Washington Gas after he violated the company's policies by admittedly sending a video with sexual and racial content to his staff and supervisor. Dreist does not, and cannot, connect this termination to any retaliatory motive by Washington Gas. His assertion that he complained to unidentified individuals in Washington Gas about the company's failure to promote him based on his race (Caucasian) at unidentified times does not allege "protected activity" or support a causal connection to his termination. The only racial discrimination objection Dreist points to is a complaint he made on March 11, 2015 *after* Washington Gas had made the decision to fire him.

Dreist simply has no retaliation claim where he violated Washington Gas's policies. Dreist's only other support for his retaliation claim is his own, self-serving interpretation that the video was "humorous" and sent to "lighten the mood". However, Dreist's personal assessment of the video is irrelevant - the video violated the company's Information Technology policy, Fair Employment Practices, and Code of Conduct. As a result, Dreist was fired. Dreist does not, and cannot, demonstrate that retaliatory animus guided his employer's decision to terminate him.

Dreist's allegations that he was discriminated against based on his race when he was not selected for two internal positions are similarly meritless on the undisputed facts. Dreist withdrew his application for the Manager, Customer Care position because he had applied to the

1

position in error, therefore he was not considered.  Dreist was interviewed for another position, Manager, Customer Experience, before a mixed-race panel of interviewers and was the lowest scoring applicant of the four applicants that were interviewed. He was thus not awarded this position.  Dreist alleges no pretext for his non-selection to these positions other than offering further self-serving conclusions that he was better qualified.  This personal opinion does not create a material issue of fact.

Where, as here, it is already clear that there is no genuine dispute as to the material facts, Washington Gas is entitled to judgment as a matter of law.

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

### A. Washington Gas Background and Policies

1.      Founded in 1848, Washington Gas delivers natural gas to more than one million residential, commercial and industrial customers throughout Washington, D.C. and the surrounding region.  *See* https://www.washingtongas.com/about/company-profile (June 15, 2016).

2.      Washington Gas maintains an office in Springfield, Virginia, which houses the Consumer Services division where Dreist was employed. *See* Tanya Hudson Affidavit ("Hudson Aff.") at ¶ 2, attached hereto as Exhibit ("Ex.") A.

3.      Washington Gas maintains corporate policies and procedures regarding fair employment practices and employee conduct.  Washington Gas's Fair Employment Practices Policy Statement, given to all employees, prohibits "employee and applicant discrimination and harassment." *See* Lynne Brown Affidavit ("Brown Aff."), Ex. A, attached hereto as Ex. B.  The policy sets forth Washington Gas's objective to "recruit, hire, train and promote the most qualified persons without regard to race, ethnicity, religion, gender, age, national origin"

2

amongst other protected attributes.  *Id.*  The Fair Employment Practices Policy states that "disparaging or offensive remarks or actions" "[do] not belong in our workplace."  *Id.*

4.      Washington Gas also maintains a "Code of Conduct" that applies to all employees of Washington Gas.  *See* Brown Aff., Ex. B.  The "Code of Conduct" provides that Washington Gas "prohibits unlawful discrimination in its employment policies and practices" and "is committed to compliance with all federal, state, and local laws and regulations regarding fair employment practices."  *Id.*  Employees are thus "expected...to conduct themselves in a professional manner that promotes employee well being.   Physical violence, threats, intimidation, harassment or discrimination in any form is prohibited, whether it is supervisor to subordinate, peer to peer, or subordinate to supervisor."  *Id.*

5.      Washington Gas offers a neutral, confidential resource for employees to report EEO concerns in the form of the Washington Gas Ombudsman.  Employees at Washington Gas receive the company's "Human Resources EEO/Affirmative Action Statement" notifying them to contact Ombudsman Lynne Brown with any EEO complaints or concerns.   *See* Brown Aff., Ex. C.

6.      Washington Gas's Information Asset Acceptable Use Policy, Policy No. 4200 ("IT policy") governs the use of company technology at work.  *See* Brown Aff., Ex. D.   The IT policy forbids "unacceptable use" of Washington Gas's information system, including "transmitting, storing, or displaying inappropriate images or text."  *Id.*  The policy also forbids "harassment" through the use of the information technology system, which includes transmissions of items that "denigrate[] or show[] hostility or aversion toward any individual or group of individuals because of his/her race, color religion, sex", amongst others, and that "has the...effect of creating an intimidating, hostile or offensive work environment....[or] the effect of

unreasonably interfering with an individual's work performance". *Id.* "Harassment" includes sending "sexually suggestive objects or pictures." *Id.*

### B. Dreist's Employment at Washington Gas

7.      On November 26, 1979, Dreist was hired by Washington Gas. *See* Brown Aff. at ¶ 7. Dreist's ethnic background is Caucasian.

8.      In 2014 and 2015, Dreist was employed as a Supervisor in Consumer Services at Washington Gas's Springfield location.   *See* Hudson Aff., ¶ 2.   Driest supervised three employees, Michael Bell (African-American), Darchelle Jackson (African-American), and Wardell Washington (African-American).  In 2014, Dreist's immediate supervisor was Manager, Customer Care a position that was vacant at the time, CIS Project Director Mark Shaver (Caucasian), and Division Head, Consumer Services, Tanya Hudson (Caucasian).  In 2015, the Consumer Services division was reorganized and Everett Coates (African-American), Manager, Customer Experience, became Dreist's immediate supervisor. *Id.* at ¶ 15.

9.      Two months prior to his termination, in February 2015, Dreist received a "performance memorandum" from his supervisor Everett Coates. *See* Hudson Aff., Ex. S. This performance memorandum warned Dreist about his "negative responses when responding to general work issues" and failing to produce the required "written work flow of daily work" when requested from his supervisor. *Id.* If Dreist did not improve his performance, it would result in a negative notation on his annual performance review. *Id.*

### C. Hiring for the Manager, Customer Care and Manager, Customer Experience Positions.

10.     Prior to July 2014, the Consumer Services division had four Manager positions: (1) Manager, BPO Governance, a position filled by Anthony Murdock, (2) Manager, Customer Meter Services, occupied by Everett Coates, (3) Manager, Customer Care, a vacant position

temporarily filled by Stephanie Jackson, and (4) Manager, Revenue Assurance, occupied by Andrew Teal. *See* Hudson Aff., ¶ 3. In 2014, Andrew Teal's employment ended and Anthony Murdock temporarily assumed the responsibilities of the Manager, Revenue Assurance position. *Id.*

11.   In July 2014, Division Head Tanya Hudson reorganized the four Consumer Services Manager positions into new positions with new responsibilities: (1) Manager, Customer Billing, filled by Anthony Murdock, (2) Manager, Customer Meter Services, still filled by Everett Coates, (3) Manager, Customer Care, a position that continued to be temporarily filled by Stephanie Jackson but would be subject to internal recruiting, and (4) Manager, Customer Experience, a position to also be filled by internal recruiting. *See* Hudson Aff., Exs. O and P. The Manager, Customer Experience position would directly oversee Driest as Supervisor and Daphne Johnson (African-American), a Senior Specialist. *See Id.*

12.   On July 7, 2014, the Manager, Customer Care and Manager, Customer Experience positions were posted internally. *Id.* at ¶ 5.

13.   Dreist submitted an application to the Manager, Customer Care position only. *See* Hudson Aff. at ¶ 7. Based on a follow-up conversation with the recruiting manager, Dreist said that he meant to apply to the Manager, Customer Experience position, not the Manager, Customer Care position. *Id.* In accordance with Dreist's request, his application was withdrawn from Manager, Customer Care and transferred for consideration to the Manager, Customer Experience position. *Id.* Dreist was not the only employee to mistakenly apply for one position instead of the other. Employee Myron Dunn had applied to the Manager, Customer Experience position when he intended to apply for Manager, Customer Care. *Id.* His application was also directed from the one position to the other. *Id.*

14.     For the Manager, Customer Care position, three applicants were interviewed by an independent panel: Stephanie Jackson (African-American), Wandatte Hattley (African-American), and Myron Dunn (Caucasian). Hudson Aff., Ex. Q. Stephanie Jackson (African-American), the acting Manager, Customer Care, was the highest scoring applicant and promoted to the position. *Id.* at ¶ 9. Dreist was not interviewed for the position because he had withdrawn his application. *Id.*

15.     For the Manager, Customer Experience position, four applicants were selected to be interviewed by an independent panel: Dreist, Everett Coates (African-American), Wandatte Hattley (African-American), and Michael Bell (African-American). Hudson Aff. at ¶ 8. Six individuals were on the interview panel, three of whom were Caucasian, two were African American, and one was Hispanic. *Id.* at ¶ 10.

16.     Each interviewee was asked the same set of questions, with additional follow up questions differing as necessary depending on the interviewee's responses. *See* Hudson Aff. at ¶ 11. Interviewers scored each candidate based on their response. *Id.* After each interview, the panel would discuss the responses and come to an agreement on a final numeric score for each question category. *Id.* The total from each category was then added together to obtain the overall interview score. *Id.*

17.     Of the four individuals interviewed for the Manager, Customer Experience position, Dreist was the lowest scoring applicant. *See* Hudson Aff., Ex. R. The interviewers noted Dreist made a comment about "Hispanics" and their ability to pay bills, and made sarcastic jokes throughout the interview that the panel found inappropriate. *Id.* at ¶ 13.

18.     Everett Coates, already a Manager in Meter Services in the Consumer Service division, was the highest scoring applicant. *Id.* at ¶ 14. The panel noted Coates' enthusiasm for

the job, ability to articulate future plans for the position based on company data, and that he had demonstrated his prior success as a Manager in the interview. *Id.* Based on his interview score, Coates was selected for the Manager, Customer Experience position. *Id.*

19.    Dreist did not make any formal complaints to Washington Gas's Human Resources, the Washington Gas Ombudsman Lynne Brown, or to his Division Head about his non-promotion to either position as due to race. *See* Brown Aff. at ¶ 11;  Hudson Aff. at ¶ 17.

**D. Dreist Sends the Kool Aid Rap Song Video**.

20.    On January 14, 2015, Dreist sent a YouTube video link embedded in an email entitled "Kool Aid Rap Song Young Ray Taylor as Johnny Cox" ("Kool Aid Rap") to his supervisor Everett Coates, copying his co-worker, Daphne Johnson, and two subordinates Michael Bell and Wardell Washington. *See* Brown Affidavit, Exs. F and G; video available at https://www.youtube.com/watch?v=lWL5roxe6Ik.  When the link in the email was clicked, the recipient was directed to the YouTube page featuring a rap song about "Kool Aid" containing clips of dancing animals and women of different races (Asian, African-American) dancing in what could reasonably be perceived as a sexualized manner. *Id.*  Driest also called his employees over to his desk and played the video for them.

21.    On the YouTube page featuring the Kool Aid Rap there was also a section for viewers to post comments about the video.  The posted comments included several inappropriate remarks including "LOL did this nigga really get mad cuz!!! Who gives a fuck man it's MF kool aid song!!" and "nigga I was just making a play song I wasn't for real get out ya box...lol..." *See* Brown Affidavit, Ex. G.

22.    Soon after, in February 2015, Coates e-mailed an informal "performance memorandum" to Dreist warning him about the need to "use appropriate workplace behavior at

all times", "[use] sound judgment", and "demonstrate professionalism in the workplace."
Hudson Aff., Ex. S.

23.     On March 4, 2015, Coates spoke to Washington Gas Human Resources ("HR")
to create a formal "performance warning" for Dreist outlining the areas that needed improvement
before Dreist's next performance review. *See* Brown Aff., Ex. E. Included in the email to HR,
Coates asked how to address the Kool Aid Rap video in the performance warning because
"[s]ome of the team members felt it was derogatory and racist." *Id.*

24.     After HR received the video Dreist had sent, Washington Gas conducted an
investigation into the circumstances surrounding the video, including interviewing Dreist's
employees who had felt the video was "derogatory and racist." *Id.* at ¶ 8. Based on the
investigation, Washington Gas made the determination to terminate Dreist for violating the Fair
Employment Practices Policy statement, IT policy, and Code of Conduct. *Id.* at ¶ 12.

### E. Dreist is Placed on Administrative Leave and Terminated from Employment.

25.     On March 11, 2015, Lynne Brown, Washington Gas Ombudsman ("Brown")
(Caucasian), and Bridnetta Edwards, Washington Gas Associate General Counsel ("Edwards")
(African-American), met with Dreist to complete the investigation into the video, culminating in
a formal termination. *See* Brown Aff. at ¶ 12. After being told the video was grounds for
termination, Dreist stated, for the first time, that he had been subject to a "hostile work
environment" based on his race. *Id.*

26.     In response, because of Dreist's complaint, the termination was stayed to
immediately investigate Dreist's concerns. *See* Brown Aff. at ¶ 12. Brown and Edwards then
interviewed Dreist on his allegations of a hostile working environment. *Id.*

27.     While the termination was stayed, to complete the investigation into Dreist's hostile work environment claim, Dreist was placed on paid administrative leave.  Brown Aff. at ¶ 12.

28.     After conducting an investigation into Dreist's hostile work environment claim, Washington Gas determined no actions were taken against Dreist with a discriminatory animus. Dreist was sent a letter notifying him of the results of the investigation on April 10, 2015. Brown Aff. at Ex. H.

29.     On April 14, 2015, Dreist was terminated for sending a video in violation of Washington Gas's Fair Employment Practices Policy statement, IT policy, and Code of Conduct. *See* Brown Aff., Ex. I.

30.     Following his termination and in accordance with Washington Gas's termination policy, Dreist was not permitted to return to Washington Gas property without authorization from Security Services.  *See* Brown Aff. at ¶ 14.   There is currently no restriction on him attending shareholder meetings, going to the credit union, or attending Quarter Century Club meetings.  *Id*.  Washington Gas individuals who are terminated for cause do not receive a payout of accrued outstanding paid time off.  *Id*. at Ex. J and K.

31.     Dreist was later mailed boxes containing his personal possessions.  *See* Brown Aff., Ex. L.

32.     Washington Gas has previously terminated other employees for violations of the IT policy.  In April 2013, Washington Gas terminated an African-American employee and in May 2014, Washington Gas terminated a Caucasian employee for violating this policy.  *See* Brown Aff., Ex. M and N.

## STANDARD OF REVIEW

Pursuant to Federal Rules of Civil Procedure Rule 12(d), if, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  Fed.R.Civ.P. 12(d).

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  All evidence should be viewed in the light most favorable to the non-moving party.  *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  "Factual disputes that are irrelevant or unnecessary will not be considered by a court in its determination." *Bostic v. Rainey*, 970 F. Supp. 2d 456, 465 (E.D. Va. 2014).  Overall, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

## ARGUMENT

### I.     Dreist was Terminated for Sending An Inappropriate Video to His Supervisor and Employees, Not Due to Any Retaliatory Animus.

Allegations of retaliation under both Title VII of the Civil Rights Act of 1964 ("Title VII") and Section 1981 of the Civil Rights Act of 1866 ("Section 1981") are subject to the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  *See also Gairola v. Virginia Dep't of General Services*, 753 F.2d 1281, 1285 (4th Cir.1985) ("Under Title VII and either § 1981 or § 1983, the elements of [a]

10

required prima facie case are the same."); *Hughes v. Navy Fed. Credit Union*, 2012 U.S. Dist. LEXIS 1302, *37, 2012 WL 32404 (E.D. Va. Jan. 4, 2012) ("Retaliation claims under both Title VII and § 1981 are similarly analyzed under the McDonnell Douglas framework.").

Dreist's claim fails on its most fundamental point – he cannot show a prima facie case of retaliatory discharge such that: (1) he engaged in a statutorily protected activity; (2) an adverse employment action occurred; and (3) a causal connection existed between the protected activity and the adverse action. *Martin Marietta Corp. v. Maryland Comm'n Human Relations*, 38 F.3d 1392 (4th Cir. 1994); *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). Even had Dreist established a prima facie case, Washington Gas has "a legitimate, non-retaliatory reason" for terminating Dreist – Dreist sent a racially and sexually charged video containing comments with racial epithets in violation of Washington Gas's policies. *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015); *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004). Dreist also fails on the final step of *McDonnel Douglas*'s burden-shifting because he cannot demonstrate that Washington Gas's nonretaliatory reasons were "not its true reasons, but were a pretext for discrimination." *Id. See also Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) *quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993) (a plaintiff must establish "both that the [employer's] reason was false and that [retaliation] was the real reason for the challenged conduct.") Above all else, Dreist cannot demonstrate here that the desire to retaliate was the "but-for cause" of his termination, "rather than a motivating factor." *Barker v. Computer Sci. Corp.*, 2015 U.S. Dist. LEXIS 39994, *18 (E.D. Va. Mar. 27, 2015) *quoting Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528, 186 L. Ed. 2d 503 (2013).

**A. Dreist's Prima Facie Case Fails Because He Cannot Allege Protected Activity or a Causal Connection Between any Alleged Protected Activity and His Termination.**

Dreist alleges that he was retaliated against for complaining about race discrimination when, beginning in December 2013, he perceived he was rejected for promotions in favor of African-American employees.   Compl. at ¶ 9.   Dreist claims he complained "about the discrimination" in three unspecified instances from December 2013 until his termination in 2015 to unnamed "managers and human resources personnel."   Compl. at ¶ 13.   These undated complaints "about the discrimination" to unidentified individuals do not allege "protected activity" to support a prima facie case of retaliation.   Dreist's allegations lack any specificity to support his claim that he engaged in a form of qualifying protected activity pursuant to the statute.   *See Johnson v. Portfolio Recovery Assocs., LLC*, 682 F. Supp. 2d 560, 578 (E.D. Va. 2009) ("The Court will not assume that Plaintiff made complaints of racial discrimination to his employer on the basis of vague references in the Complaint.   Such conclusory allegations, without corresponding supporting facts, are insufficient to give fair notice to Defendant and to make Plaintiff's claim plausible on its face…..**Not only does Plaintiff fail to describe specific instances when he complained to his employer of racial discrimination, but no specifics are provided in the Complaint that could be construed as stating when, how or to whom Plaintiff allegedly complained of racial discrimination.**") (emphasis added); *Miles v. Dell Inc.*, 429 F.3d 480, 492 (4th Cir. 2005) (dismissing an employee's retaliation claim for failure to allege that she complained to her supervisor about discrimination).   Dreist's vague, unspecific allusions to contact with "managers and human resources personnel" some time between 2013 and 2015 do not allege protected activity to support a prima facie case.

Even assuming, *arguendo*, that Dreist did engage in protected activity at some point from 2013 until his termination, his prima facie case still fails because he cannot show a causal

12

connection between his protected activity and his termination. The only allegation Dreist offers in support of his retaliation claim is that he was fired subsequent to complaining about discrimination. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (holding that a plaintiff must show that the employer fired him *because* he engaged in a protected activity) (emphasis added). "Although temporal proximity can establish a causal connection for purposes of satisfying the prima facie case, the temporal proximity between the events must usually be very short." *Harik v. NASA*, 2006 U.S. Dist. LEXIS 60959, *41, 2006 WL 2381964 (E.D. Va. Aug. 16, 2006).

Here, the only complaint about discrimination actually identified by Dreist was on March 11, 2015, *after* he was already in a meeting discussing his termination. Brown Aff. at ¶ 12. "As [the Fourth Circuit] and others have stated, an employment action cannot be adverse when the action was contemplated before the protected activity occurred." *Buchhagen v. ICF Int'l, Inc.*, 2016 U.S. App. LEXIS 9806, *13-14 (4th Cir. May 31, 2016). *See also Harik v. NASA*, 2006 U.S. Dist. LEXIS 60959, *40, 2006 WL 2381964 (E.D. Va. Aug. 16, 2006) ("None of the plaintiff's formal complaints to the EEOC or the VCHR can satisfy the causal connection element because they all occurred after his termination."); *Fletcher v. Philip Morris USA Inc.*, 2009 U.S. Dist. LEXIS 63094, *30, 2009 WL 2067807 (E.D. Va. July 13, 2009) ("Defendants' asserted reason for Plaintiff's termination was Plaintiff's low-performance rating, the first of which occurred *before* Plaintiff's complaints and EEOC charge. Thus, Plaintiff's allegations fail to give rise to a plausible inference that Plaintiff was terminated because he filed his EEOC charge.") (emphasis added); *Phillips v. City of Concord*, 2013 U.S. Dist. LEXIS 66027, *28, 2013 WL 1934869 (M.D.N.C. May 9, 2013) ("Where adverse action commences before the protected activity, no causal link exists between the adverse action and the protected activity.")

Notably, Dreist's hostile work environment complaint during the March 11 termination meeting actually resulted in his *not* being terminated at that time.  Instead of being fired from employment that day, Dreist's termination was stayed so the company could investigate his hostile work environment allegations.  *See* Brown Aff. at ¶ 12.

Dreist does not offer any temporal proximity between his termination and the undated complaints to nameless individuals from December 2013 to 2015.  Moreover, even if Dreist had complained to someone at Washington Gas in December 2013 or 2014 the period of time between such a complaint and his termination in April 2015 would be far too long a span to support the temporal proximity requirement.  *See Nasis-Parsons v. Wynne*, 2006 U.S. Dist. LEXIS 35325, *10-11, 2006 WL 1555913 (E.D. Va. June 1, 2006) ("There is no bright-line rule; however, a three- to four-month delay has been held to be too long to establish a causal connection").  *See also Williams v. Philadelphia Housing Auth. Police Dept.,* 380 F.3d 751 (3d Cir. 2004) (holding that a three month gap is too long to support a causal connection); *Hysten v. Burlington N. & Santa Fe Ry. Co.,* 296 F.3d 1177, 1184 (10th Cir. 2002) (holding that a three month gap is too long to support a causal connection), *Kipp v. Missouri Highway & Trans. Comm'n,* 280 F.3d 893, 897 (8th Cir. 2002) (holding that a two month gap is too long for a connection); *Filipovic v. K&R Express Sys. Inc.,* 176 F.3d 390, 398-99 (7th Cir. 1999) (holding that a four month gap is too long for a causal connection).

Dreist also fails to allege that any of the individuals involved in his termination had any knowledge of his undated complaints of discrimination on which a retaliatory animus could be based.  *See Buchhagen*, 2016 U.S. App. LEXIS 9806, *13 *quoting Baqir v. Principi*, 434 F.3d 733, 748 (4th Cir. 2006) ("recognizing that employee must show that the employer knew of his protected activity to constitute retaliation"); *Barker v. Computer Sci. Corp.*, 2015 U.S. Dist.

14

LEXIS 39994, *18 (E.D. Va. Mar. 27, 2015) ("Plaintiff must show that the person who engaged in the retaliatory act knew of his [protected] activities."). Dreist fails to identify *any* person to whom he addressed a complaint about race discrimination from December 2013 until he was placed on leave in March 2015, let alone if that individual had any involvement in his termination.

The only individuals to whom Dreist voiced complaints of a "hostile work environment" were Ombudsman Lynne Brown and Washington Gas Associate General Counsel Bridnetta Edwards **who were already in the process of terminating** Dreist on March 11, 2015 when Dreist first raised these complaints.  Neither Brown nor Edwards are alleged to have any knowledge of Dreist's complaints before engaging in the termination meeting on March 11, 2015.  Without alleging that any of the individuals involved with his termination had any knowledge of Dreist's unspecified complaints about discrimination, he cannot show there was any retaliatory animus behind his termination. *See Balas v. Huntington Ingalls Indus.*, 711 F.3d 401, 410-411 (4th Cir. 2013) ("Balas does not dispute that Lowman, the manager responsible for firing her, was not aware of her complaint to Price regarding the jeans incident...Because Lowman did not know of the protected activity, and because Price, who allegedly influenced him, was not principally responsible for the decision to terminate Balas's employment, we affirm the district court's grant of summary judgment to Huntington Ingalls on the retaliatory discharge claim.").  On these bases, Dreist does not, and cannot, show the basic elements of a retaliation claim.[1]

---

[1]  Dreist claims that as a result of his termination "Washington Gas has forbidden [him] from stepping onto Washington Gas's property," "effectively" depriving him of attending shareholder meetings, visiting the credit union, or attending the Quarter Century Club meetings. Compl. at ¶ 44.  He also alleges Washington Gas "refused to send him" training documentation and his LEED certification and did not give him accrued paid time off. *Id.* at ¶¶ 41.

## B. WGL Had a Legitimate, Non-Discriminatory Reason for Dreist's Termination.

Dreist was terminated because he sent an inappropriate video with reasonably perceived racial and sexual content and comments involving racial epithets to his supervisor and subordinates in violation of Washington Gas's IT Policy, Fair Employment Practices, and Code of Conduct.  There is no dispute that Dreist admitted to sending the video in question and the corresponding YouTube page with the offensive comments.  Compl. at ¶¶ 19, 20, 2-29. Following receipt of the video, some employees said that they felt the video was "derogatory and racist." Brown Affidavit, Ex. E.

Washington Gas's IT policy forbids "unacceptable use" of Washington Gas's information system, including "transmitting, storing, or displaying inappropriate images or text."  Brown Affidavit, Ex. D.  Sending "sexually suggestive objects or pictures" or images that "denigrate[] or show[] hostility or aversion toward any individual or group of individuals because of his/her race, color religion, sex" and that "has the...effect of creating an intimidating, hostile or offensive work environment....[or] the effect of unreasonably interfering with an individual's work performance" will result in a termination.  *Id.*  Washington Gas's "Code of Conduct" further provides that employees are "expected...to conduct themselves in a professional manner that promotes employee well being...harassment or discrimination in any form is prohibited, whether

---

Dreist's allegations are directly in conflict with the language of his termination letter, which states Dreist could not return to Washington Gas's premises "*without prior authorization by Washington Gas Security Services*." Brown Aff. at Ex. I (emphasis added).  Dreist makes no allegation that he attempted to attend any of the activities he was "effectively" deprived from, or that he made any effort to contact Security Services to attend these activities.  It is Washington Gas's policy that individuals terminated for cause cannot return to the premises without consulting security and if terminated for cause, do not receive paid time off.  *See* Brown Aff. at Exs. J and K.

Dreist further was not deprived his LEED certifications and training documents.  *See* Brown Aff. at Ex. L, email correspondence with Dreist detailing the company's attempts to send him requested documentation.

it is supervisor to subordinate, peer to peer, or subordinate to supervisor." *Id.* at Ex. B.   Dreist violated Washington Gas policies when he sent the video.  He was thus subject to termination.

Washington Gas enforces these policies regardless of race.  In the past two years before Dreist's termination, Washington Gas terminated both Caucasian and African-American employees for violating the IT policy.  *Id.* at Ex. M and N.

### C. Dreist Cannot Show Washington Gas's Legitimate, Non-Discriminatory Reason was Pretextual.

Dreist bears the "ultimate burden of persuading the court that he has been the victim of intentional [retaliation]." *Hill*, 354 F.3d at 285 *quoting Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981); *see also Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010) (identifying the "ultimate question" in any Title VII case under either framework as "discrimination vel non") *quoting U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983).  Dreist cannot show retaliatory motive here.

Dreist's self-serving belief that *he* "did not see the video as derogatory or racist" and no individuals to whom he sent the video told *him* they found the video offensive does not establish pretext.  Compl. at ¶¶19, 20, 27.  "To defeat summary judgment, the plaintiff must present admissible evidence that is more than self-serving opinions or speculation." *Harik v. NASA*, 2006 U.S. Dist. LEXIS 60959, *43, 2006 WL 2381964 (E.D. Va. Aug. 16, 2006).  The Fourth Circuit has "repeatedly explained that 'it is the perception of the decision maker which is relevant,' not the self-assessment of the plaintiff." *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998).  Dreist himself may have thought the video was a joke and not found it racially insensitive, but the decision whether the video was appropriate in the workplace was not Dreist's to make.  The subject matter of the video and following commentary – which included

17

use of the "n-word" - was certainly reasonably perceived by Washington Gas to be inappropriate for a supervisor to send in the workplace and to be in violation of Washington Gas's policies. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001) ("Far more than a 'mere offensive utterance,' the word 'nigger' is pure anathema to African-Americans.' Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates.") (internal citation omitted); *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013) ("nigger" is "a deeply offensive racial epithet").[2]   Although Dreist's African-American co-workers did not complaint to *him* about the video, some complained to his supervisor that they found the video "derogatory and offensive."   Washington Gas likewise found the video to be in violation of the IT and harassment policy.

Dreist alleges the Virginia Unemployment Compensation Commission also reviewed the video and found "such action cannot, in the opinion of the deputy, be deemed misconduct...." Compl. at ¶ 46.   But the Commission's opinion as to whether Dreist committed misconduct under the Virginia Unemployment Compensation Commission standard of review does not establish pretext either.   The question before the Court is not if everyone would find the video and comments offensive, but **if Washington Gas and Dreist's employees could reasonably view the video as offensive and as violating Washington Gas's policies**.   "Title VII is not a vehicle for substituting the judgment of a court for that of the employer." *Jiminez v. Mary Washington College*, 57 F.3d 369, 377 (4th Cir. 1995). *See also EEOC v. Clay Printing Co.*, 955 F.2d 936,

---

[2]       Noting the term used in the YouTube comments is "nigga", it is reasonable a viewer could find no distinction between the two words. *See Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1230 (10th Cir. 2015) (considering the terms "nigger" and "nigga" and "view[ing] the two terms as equivalent"); *Fair v. Basic Metals, Inc.*, 2007 U.S. Dist. LEXIS 46745, *21, 2007 WL 1847282 (E.D. Wis. June 26, 2007) ("the court shall assume that Fair regarded the use of the word 'nigga' as equivalent to the use of the word 'nigger.'").

946 (4th Cir. 1992) ("It is not the purpose of the EEOC nor the function of this court to second guess the wisdom of business decisions.").   Washington Gas employees who had viewed the video complained it was "derogatory and racist" as did Washington Gas HR.   *See* Brown Affidavit, Ex. E.

Notably, for Washington Gas, it is "subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S. Ct. 2275, 2293, 141 L. Ed. 2d 662, 689 (1998).   To comply with Title VII, Washington Gas must "exercise[] reasonable care to prevent and correct promptly" any harassing behaviors by a supervisor.   *Id.   See also EEOC v. Xerxes Corp.*, 639 F.3d 658, 669 (4th Cir. 2011) ("Once the employer has notice, then it must respond with remedial action reasonably calculated to end the harassment.")   Washington Gas accordingly dealt with complaints that Dreist, a supervisor, had sent a video subordinates found harassing in nature by removing Dreist from the workplace in accordance with its Code of Conduct, Fair Practices, and IT policy.   *See* Brown Affidavit, Ex. I.   Dreist cannot demonstrate that "but for" Washington Gas's "desire to retaliate," Dreist would not have been terminated when he sent the offensive video and link.   *See Barker v. Computer Sci. Corp.*, 2015 U.S. Dist. LEXIS 39994, *18 (E.D. Va. Mar. 27, 2015) (O'Grady) (granting summary judgment where evidence was not sufficient to show that but-for the plaintiff's alleged protected activities, he would not have been suspended or terminated).

Dreist otherwise fails to allege any similarly situated team member who was treated more favorably than he to establish a pretextual motive.   *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir. 1989) (holding that "a plaintiff's own assertions of discrimination in and by themselves are insufficient to counter substantial evidence [of] a legitimate, nondiscriminatory reason for an adverse employment action.")   Instead, Washington Gas uniformly enforces its

19

policies and procedures, having terminated two employees (African-American and Caucasian) within two years of terminating Dreist for violating the IT policy. *See* Brown Affidavit, Ex. M and N.

In all, Dreist offers nothing more than a barefaced legal conclusion he was retaliated against. There was a clear reason for Dreist's termination and Dreist offers no pretextual reason other than self-serving statements reaffirming his personal interpretation of the video. Dreist's claim thus fails and must be dismissed. *See Ibrahim v. Old Dominion University*, 1989 U.S. Dist. LEXIS 18059, \*65-66 (E.D. Va. July 6, 1989) ("Dr. Ibrahim appears to believe that this Court should be convinced by his conclusory statements that retaliation has taken place at Old Dominion. A court, however, cannot act simply on the belief of an individual that he has been mistreated. Dr. Ibrahim has presented no credible evidence to rebut any of the explanations advanced by Old Dominion. It is not enough to label a situation 'clearly' retaliatory, and no court should be swayed by such logic."); *Glynn v. Impact Sci. & Tech., Inc.*, 807 F. Supp. 2d 391, 418-419 (D. Md. 2011) ("It is perfectly legitimate for an employer to terminate an employee who proves toxic to a work environment.").

## II.  Dreist's Cause of Action for Race Discrimination Similarly Fails.

To avert summary judgment in both a Section 1981 and Title VII employment discrimination case,[3] Dreist must either (1) present direct or compelling circumstantial evidence that discrimination motivated the employment decision at issue, or (2) raise an inference of discrimination through the two-step "pretext" framework set forth in *McDonnell Douglas Corp.*

---

[3]      For a failure to promote claim, "the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), burden-shifting analysis applies, both in Title VII and § 1981 cases." *Hughes v. Navy Fed. Credit Union*, 2012 U.S. Dist. LEXIS 1302, \*26, 2012 WL 32404 (E.D. Va. Jan. 4, 2012).

*v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004).

Dreist alleges no direct evidence of discriminatory animus in his non-promotion, therefore he must proceed under the *McDonnell Douglas* framework, bearing "both the ultimate burden of persuasion and the initial burden of establishing, by a preponderance of the evidence, a prima facie case of unlawful discrimination." *Hamilton v. Geithner*, 2009 U.S. Dist. LEXIS 49987, *35-36, 2009 WL 1683298 (E.D. Va. June 15, 2009). *See also St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007).

In a non-selection case, Dreist must establish his prima facie case by submitting admissible evidence that: (1) he is a member of a protected class; (2) he applied for the position in question; (3) he was qualified for the position; and (4) he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. *Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004). To refute Washington Gas's proffered non-discriminatory reason for his non-selection, Dreist must establish that he was the "better-qualified candidate for the position" or put on sufficient evidence to "undermine the credibility of the employer's stated reasons" for the his non-selection. *Heiko v. Colombo Sav. Bank*, 434 F.3d 249, 259 (4th Cir. 2006). *See also Gairola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1287 (4th Cir. 1985).

### A. Dreist Cannot Allege a Prima Facie Claim for Race Discrimination For the Manager, Customer Care Position Where He Withdrew His Application From Consideration.

Dreist's failure-to-promote claim for the Manager, Customer Care position fails because he withdrew his application for the position. *See* Hudson Affidavit at ¶ 7. When the Manager, Customer Care and Manager, Customer Experience positions were posted together, some confusion arose because employees who intended to apply for one position in actuality applied

21

for the other. *Id.* Dreist was one of those employees. *Id.* He had applied only to the Manager, Customer Care position but later indicated that his application was intended for the Manager, Customer Experience position, not Manager, Customer Care. *Id.* His application was then switched in accordance with his request. *Id.*

"If an employer has a formal system of posting vacancies and allowing employees to apply for such vacancies, an employee who fails to apply for a particular position cannot establish a prima facie case of discriminatory failure to promote." *Williams v. Giant Food, Inc.*, 370 F.3d 423, 430 (4th Cir. 2004) (dismissing failure-to-promote claim where employee did not apply for promotion). *See also Tyndall v. Dynaric, Inc.*, 997 F. Supp. 721, 727-728 (E.D. Va. 1998) ("It is clear however, that a failure to apply is fatal to a claim of discriminatory refusal to promote. If an employee does not apply for a desired promotion, the employer need make no decision with respect to that employee, and there can be no actionable discriminatory motivation."); *Justus v. Junction Ctr. for Indep. Living*, 2012 U.S. Dist. LEXIS 32553, *11, 2012 WL 844340 (W.D. Va. Mar. 12, 2012) ("the court concludes that Justus's failure to apply for the position of Information Referral Specialist is fatal to his claim of discrimination."). Because Dreist withdrew his application for Manager, Customer Care from consideration, he does not establish a prima face case for failure to promote to this position.

**B. Washington Gas had a Legitimate, Non-Discriminatory Reason for Dreist's Non-Promotion.**

**1. The Manager, Customer Care Position.**

As discussed *supra*, Dreist was not promoted to the Customer Care position because he informed the hiring committee that he had applied to the wrong position. *See* Hudson Affidavit at ¶ 7. Dreist had intended to apply for Manager, Customer Experience, not Manager, Customer Care. *Id.* Therefore his application was transferred to Customer Experience and he was not

22

considered for the Customer Care position.   Dreist was not the only employee to switch applications during the dual posting.  Employee Myron Dunn made the same error as Dreist only *vice versa*, applying to Customer Experience when he had meant to apply for Customer Care.  *Id.* Washington Gas accordingly allowed each employee to have their applications count for the positions to which they had truly intended to apply.  *See, e.g., Thompson v. Kelso*, 1997 U.S. App. LEXIS 24937, *3 (4th Cir. Va. Sept. 16, 1997) ("The record in this case, considered in the light most favorable to Thompson, reveals that his application for the vacancy and his supporting credentials were not submitted to the proper decision-making authorities. Therefore, his application was neither considered nor rejected on any basis. And because Thompson's application was not the only one that did not reach the proper authorities, he has failed to prove that the omission was based on his race. Accordingly, we find that the district court properly dismissed Thompson's claim of racially discriminatory failure to promote.").

Once Dreist withdrew his application for the Manager, Customer Care position, he was no longer considered for the position and therefore not selected for an interview.  *See* Hudson Affidavit at ¶ 9.  Washington Gas interviewed three employees for Manager, Customer Care and Stephanie Jackson was the highest scoring interviewee.  *Id.* at Ex. Q.  Stephanie Jackson was thus selected for the position.  *Id.* at ¶ 9. [4]

---

[4]     Even if there was some confusion or dispute as to whether Dreist withdrew his application, the fact that the employer reasonably perceived that to be the case and acted in accordance with that belief does not establish an inference of racial motivation.  *See Price v. Thompson*, 380 F.3d 209, 214 n. 1 (4th Cir. 2004) ("We note that [an employer's] mistakes of fact are not evidence of unlawful discrimination."). That is especially true here where Dreist was simultaneously considered and interviewed for another, parallel promotion.  *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 148, 120 S. Ct. 2097, 2109, 147 L. Ed. 2d 105, 120 (2000) ("Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory."); *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 298 (4th Cir. 1998) ("This Court has held that to establish that an employer's "proffered reason for

### 2.   The Manager, Customer Experience Position.

Dreist was not promoted to the Manager, Customer Experience position because he received a lower interview score than the individual selected.   A mixed-race panel interviewed four people for the position:   Dreist, Everett Coates, Michael Bell, and Wandatte Hartley.   *See* Hudson Affidavit at ¶¶ 10, 12.   The interviewees were asked the same initial set questions and give numeric scores based on their responses, which were totaled for a final interview score.   *Id.* at ¶ 11.   Dreist failed the interview by making inappropriate remarks - including one about "Hispanics", leading his responses with sarcastic jokes, and demonstrating an overall flippant demeanor.   *Id.* at ¶ 13.   Of the four individuals interviewed, Dreist was the lowest scoring candidate on the entire panel.   *Id.* at Ex. R.   The individual selected for the position, Everett Coates, was already a Manager in the Consumer Services division and performed very well in the interview, articulating concrete future goals for the Manager, Customer Experience position and doing so with a positive attitude.   *Id.* at ¶ 14.   Coates scored the highest in the interview and was therefore promoted to the position.   *Id.* at ¶ 15.   *See also McIntyre v. City of Chesapeake*, 2015 U.S. Dist. LEXIS 56966, *21 (E.D. Va. Apr. 30, 2015) ("Defendant promoted Bonniville over Plaintiff, because Bonniville achieved the highest score of the five applicants during the interview process, whereas Plaintiff only ranked third. Thus, Defendant has successfully rebutted the presumption of discrimination by articulating a valid and nondiscriminatory reason for declining to promote Plaintiff to CIS.").

---

the challenged action is pretext for discrimination, the plaintiff must prove '*both* that the reason was false, *and* that discrimination was the real reason' for the challenged conduct.") (emphasis in original) (internal citation omitted).

### C. Dreist Fails to Show Pretext for His Non-Selection.

Dreist offers nothing other than his own assessment that he was not selected for the positions because of his race.   Dreist's personal belief that he should have been promoted does not establish pretext.   *See Hamilton v. Geithner*, 2009 U.S. Dist. LEXIS 49987, *42, 2009 WL 1683298 (E.D. Va. June 15, 2009) ("Even if Plaintiff could establish a prima facie case, Defendant has submitted a legitimate, nondiscriminatory reason for its non-selection of Plaintiff: Plaintiff's comparatively low ranking. Plaintiff's converted Office of Personnel Management ranking score was 96. Seven other individuals scored from 99 to 102. The lowest score passed on for further consideration by Harriger scored a 99. **Plaintiff's raw speculation that he was not chosen because of his race is insufficient to show that Defendant's stated reason for not selecting him was pretextual**.") (emphasis added).   Dreist's own evaluation that he was "better qualified" for the positions than Stephanie Jackson and Everett Coates has no basis other than Dreist's personal beliefs.   In a motion for summary judgment, "Plaintiff's self-serving evaluation of his performance 'cannot create a genuine issue of material fact.'"   *Khan v. FedEx Corp.*, 2015 U.S. Dist. LEXIS 69912, *25-26 (E.D. Va. May 28, 2015) *citing Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). ("It is FedEx Office's perception of Plaintiff's performance that matters, not Plaintiff's.   *See Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 518 (4th Cir. 2006) (collecting authority for the proposition that a plaintiff's own assessment [of] his performance is irrelevant and that it is the decision-maker's perception that matters); *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003)(holding that the plaintiff's self-assessment is irrelevant); *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 300 (4th Cir. 1998)(plaintiff's self-assessment and the opinions of plaintiffs coworkers are not relevant); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959, 960

(4th Cir. 1996) (plaintiff's own "conclusory statements about her qualifications" are insufficient to establish a prima facie case of discrimination").")

Any evidence Dreist could present on his qualifications for the positions, such as serving a longer time at the company or superior prior performance reviews would not demonstrate pretext for his non-selection.   The Fourth Circuit routinely holds that in failure-to-promote cases, the Court cannot act as a "super-personnel department weighing the prudence of employment decisions" made by defendants. *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 272 (4th Cir. 2005) (granting summary judgment where even though plaintiff had superior education and tenure as a professional assistant than others promoted before her, these characteristics were not definitive to the job selection decision).   An "employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 259, 101 S. Ct. 1089, 1097, 67 L. Ed. 2d 207, 219 (1981).   To this extent, "[i]nterviews are an important tool that employers use to make all sorts of hiring decisions, and [the Court] may not lightly overturn the reasonable conclusions an employer reaches after actually meeting with a candidate face-to-face." *Hux v. City of Newport News,* 451 F.3d 311, 319 (4th Cir. 2006).

The determining factor for both positions was the interview.   For the Manager, Customer Care position, Dreist withdrew his application and so was not interviewed.   Therefore, he could not have been better qualified for the position than Stephanie Jackson, who interviewed and was the highest scoring candidate.   *See* Hudson Aff., Ex. Q.   And, regardless whether Dreist was better rated in certain performance areas than Everett Coates, the selectee for the Manager, Customer Care position, this would also not alter the fact that Dreist failed his interview - the deciding factor for the promotion to the position.   A plaintiff "cannot establish [his] own criteria

for judging [his] qualifications for the promotion. [He] must compete for the promotion based on the qualifications established by [his] employer." *McIntyre v. City of Chesapeake*, 2015 U.S. Dist. LEXIS 56966, *23 (E.D. Va. Apr. 30, 2015) *quoting Anderson*, 406 F.3d at 269.   The interview was the final, qualifying step for both promotions.   Dreist did not interview for one position and for the other, Dreist was the lowest scoring candidate based on the assessments of a racially diverse interview panel.   *See* Hudson Aff., Ex. R.   Driest thus fails to establish any pretext when he was not promoted to the Manager, Customer Care and Manager, Customer Experience positions.   *See Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1130 (4th Cir. 1995) ("Even if [plaintiff's] education and outside experience were objectively superior to Lenker's, BG&E could properly take into account both the objective factor of Lenker's outstanding performance at Calvert Cliffs and the more subjective factors like his good interpersonal skills and his ability to lead a team."); *McIntyre v. City of Chesapeake*, 2015 U.S. Dist. LEXIS 56966, *26 (E.D. Va. Apr. 30, 2015) ("Indeed, Plaintiff offers nothing more than her own assessment of her credentials in support of her argument that Defendant's decision to promote Bonniville instead of her was the product of discriminatory intent. Because it is Defendant's assessment of Bonniville's and Plaintiff's relative qualifications that controls — not Plaintiff's — the Court finds that Plaintiff fails to show that Defendant's proffered reason for not promoting her constitutes pretext."); *Harris v. Rumsfeld*, 428 F. Supp. 2d 460, 469 (E.D. Va. 2006) ("In sum, Harris' claim of discrimination through failure to promote must fail. She is unable to demonstrate that Rumsfeld's articulated justification for denying her the promotion is pretext for racial discrimination. DFAS was well within its bounds to promote Wilson and Parsons, both of whom had higher interview scores than Harris.").[5]

---

[5]   Discovery into the individual impressions of each the individuals on the interview panel or

## CONCLUSION

Dreist has no cognizable claim for retaliation and race discrimination pursuant to Title VII or Section 1981, Dreist's Complaint should therefore be dismissed with prejudice.

Dated: June 15, 2016                            Respectfully submitted,

                                                SANDS ANDERSON PC


                                                /s/ J. Jonathan Schraub
                                                J. Jonathan Schraub (#17366)
                                                George R. Pitts (#24978)
                                                Sarah A. Bucovetsky (#78322)
                                                SANDS ANDERSON PC
                                                1497 Chain Bridge Road
                                                Suite 202

---

discovery on Dreist's qualifications and experience "would not…create[] a genuine issue of material fact sufficient to defeat summary judgment" where Dreist simply disagrees with his employer. *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 953 (4th Cir. 1995). *See Murchison v. Astrue*, 466 Fed. Appx. 225, 230-231 (4th Cir. 2012) (denying request for discovery where "[Plaintiff] seeks to establish that [his] qualifications were superior to those of Neal. However, Gambino selected Neal for the Director of ORCICA position because the policy was to hire from within the department, Neal was working within ORCICA at the time and [plaintiff] was not, and Gambino deemed Neal to be a competent employee who could provide for a smooth transition. The district court was within its discretion in denying the motion with respect to these discovery needs on the ORCICA promotion because the facts sought, if established, would not create a genuine issue of material fact as to whether the reasons given were pretext."). *See also Devonish v. Napolitano*, 2014 U.S. Dist. LEXIS 15100, *25-30, 2014 WL 465707 (D. Md. Feb. 4, 2014) ("Devonish contends that discovery is necessary to 'reconcile[e] . . . Devonish's exemplary performance review and Ms. Harris' later contention that Ms. Devonish was not well organized and otherwise less qualified than the selectee....' Devonish has not shown that further discovery on this issue is likely to create a genuine dispute of material fact sufficient to defeat summary judgment. The established criteria for promotion did not include prior on-the-job performance.") ("Devonish also contends that discovery is necessary to determine "the method by which interview scores were tabulated....Devonish has not explained how that tabulation evidence could create a triable issue of fact on the issue of pretext. DHS submitted [by affidavit] Harris's detailed reasons why she graded Devonish 'below average' on eight of the interview questions, and all three members of the interview panel agreed that Devonish performed worse than the other candidates during the interview. Discovering the method by which Harris marked candidates' scores will not refute the fact that Devonish performed poorly during the interview, and that this ranked her beneath two candidates for the promotion.").

28

McLean, VA  22101
(703) 893-3600 telephone
(703) 893-8484 facsimile
jjschraub@sandsanderson.com
gpitts@sandsanderson.com
sbucovetsky@sandsanderson.com

*Counsel for Defendants Washington Gas Light Co.
and WGL Holdings, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of June, 2016, I will file the foregoing

document with the Clerk of the Court using the CM/ECF system, which will send a notification

of electronic filing (NEF) to the following:

Sharon Fast Gustafson
Sharon.fast.gustafson@gmail.com
Attorney at Law, PLC
4041 N. 21st Street
Arlington, VA  22207-3040
703-527-0147

*Counsel for Plaintiff*

/s/ J. Jonathan Schraub
J. Jonathan Schraub (#17366)
George R. Pitts (#24978)
Sarah A. Bucovetsky (#78322)
SANDS ANDERSON PC
1497 Chain Bridge Road
Suite 202
McLean, VA  22101
(703) 893-3600 telephone
(703) 893-8484 facsimile
jjschraub@sandsanderson.com
gpitts@sandsanderson.com
sbucovetsky@sandsanderson.com

*Counsel for Defendants Washington Gas Light Co.
and WGL Holdings, Inc.*

29